IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS E. MUTZ, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| AGERE, INC. | : | |
| | : | |
| Defendant. | : | No. 04-5082 |

## MEMORANDUM

Thomas E. Mutz filed this action against his former employer, Agere, Inc.  Mutz contends that Agere illegally denied his right to take leave for a serious health condition and retaliated against him for taking leave for that condition.  Mutz also contends that Agere unlawfully terminated him in order to interfere with his attainment of benefit rights.  On June 16, 2005, Agere filed a motion for summary judgment, arguing that Mutz cannot show that it retaliated against him for taking leave for a serious health condition and that Mutz cannot demonstrate that it terminated him in order to interfere with his attainment of benefit rights.  For the reasons discussed below, this court will grant Agere's motion.

## I.    BACKGROUND

Thomas E. Mutz filed this suit against Agere, Inc. on October 29, 2004, raising claims under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq., and the Employee Retirement Income Security Act ("ERISA"), id. § 1001, et seq.  In his complaint, Mutz states that he worked for Agere for more than twenty-four years until his

separation from the company on March 28, 2003.  Pl.'s Compl., at 1.  Agere is a provider

of advanced integrated circuit solutions for wireless data, high-density storage, and multi-

servicing network applications.  Paul Bento Decl., at ¶ 5.  Mutz was a unionized

computer-aided design drafter.  Pl.'s Compl., at 1-2.

      Agere contracted with Kemper National Services to administer employee leave.

Id. at 2.  Mutz states that on December 24, 2002, he received written approval from

Kemper for intermittent leave under the FMLA based on hypothyroidism.  Id. at 2.

According to Mutz, he was entitled to take time off "if his illness flared up and required

treatment, or if he needed to go to see his doctor."  Id.  Mutz contends that the notice

approving his intermittent leave stated that he had a right to "take up to 12 weeks of

unpaid leave in a rolling 12-month period."  Id.  Mutz states that effective December 12,

2002, his leave was to be deducted from the twelve weeks of FMLA entitlement.  Id.

According to Mutz, the notice "left to [his] discretion whether and when to take

intermittent leave.  He was given no instructions on when he could take leave, or in what

time increments he could take leave."  Id.  He was "not notified of any requirement to

keep time records, and there were not any conditions placed on the FMLA leave."  Id. at

3.  He was "not provided any code information, time card description, or any other details

or conditions regarding his leave."  Id.

Mutz states that the illness for which he sought and received approval for

intermittent FMLA leave is such that it "creeps up on him slowly and then takes over his

body." <u>Id.</u>  Mutz states that when he used his intermittent leave, he notified his stand-in supervisor, Charlotte Kirby, "who was well aware of the situation." <u>Id.</u>  According to Mutz, "[s]he was the only person he needed approval from and he had her approval." <u>Id.</u> Mutz further notes that he complied with all work rules.  <u>Id.</u>

On February 10, 2003, Agere informed Mutz and another employee, Glenn Ott, that they were being terminated for falsely indicating on their time sheets on numerous occasions that they were at work when they were not there.  Mutz Dep., at 36.  In order to enter and exit Agere's facility, Mutz had to swipe his identification badge at a gate by the parking lot and, depending on the time of day, at the door of the building in which he worked.  <u>Id.</u> at 34.  Agere maintained records of the swipes.  Edgar Tanner Dep., at 76. According to Agere, Mutz's time sheets did not correspond to the recorded gate swipes. Def.'s Mem. Supp. Summ. J., Ex. K-M.  In many instances, the gate swipes reflected that Mutz was at work for less time than he reflected on his time sheets.  <u>Id.</u>

Mutz's union filed a grievance, stating that he was being terminated without just cause.  <u>Id.</u>, Ex. O.  On February 12, 2003, Agere, the union, and Mutz entered into an agreement pursuant to which Mutz was considered suspended without pay from February 11, 2003 until March 28, 2003, the date on which he voluntarily resigned.  <u>Id.</u>, Ex. O-P; Mutz Dep., at 51.

Mutz notes that Agere allowed employees who were at least forty-five years old or who had at least twenty-five years of service to apply for an early retirement buy-out.

3

Pl.'s Compl., at 6.  According to Mutz, on November 30, 2003, he turned forty-five years old, and on October 29, 2003, he would have attained twenty-five years of service with Agere.  Id.

Mutz contends that Agere violated the FMLA by denying his FMLA rights and by retaliating against him for taking FMLA leave by terminating him.  Id. at 4-5.  Mutz also claims that Agere violated ERISA by interfering with his ERISA rights.  Id. at 7.  According to Mutz, Agere terminated him seven months before he would have qualified for the early retirement buy-out in order to save the company hundreds of thousands of dollars in early retirement pension benefits that it otherwise would have had to pay.  Id.

On June 16, 2005, Agere filed a motion for summary judgment, seeking to dismiss the FMLA retaliation claim and the claim that Agere violated his ERISA rights.  Specifically, Agere argues that Mutz's FMLA retaliation claim should be dismissed because his FMLA leave and the adverse employment action were not causally related and because the adverse decision was based on a legitimate, nondiscriminatory reason: Mutz falsely indicating on his time sheet on numerous occasions that he was at work when he was not there.  Agere also argues that Mutz's ERISA claim should be dismissed because Mutz cannot establish that Agere specifically intended to violate ERISA.[1]

---

[1] Mutz also raises a claim under Section 2615(a)(1) of the FMLA, which makes it unlawful for an employer "to interfere with, restrain, or deny" an employee's FMLA rights.  29 U.S.C. § 2615(a)(1).  Because Agere does not move for summary judgment on Mutz's Section 2615(a)(1) claim, this court need not consider whether that claim must be dismissed.

4

## II.    STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  F.R.C.P. 56(c).  The moving party bears the initial burden of showing that there is no genuine issue of material fact.  Highlands Ins. Co. v. Hobbs Group LLC, 373 F.3d 347, 350-51 (3d Cir. 2004).  Once the moving party has carried its burden, the nonmoving party must come forward with specific facts to show that there is a genuine issue for trial.  Williams v. West Chester, 891 F.2d 458, 464 (3d Cir. 1989).  A fact is "material" if its resolution will affect the outcome under the applicable law, and an issue about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The court must draw all justifiable inferences in favor of the nonmoving party.  Highlands Ins. Co., 373 F.3d at 351.

## III.    DISCUSSION

### A.    The FMLA Retaliation Claim

To establish a prima facie case of retaliation under the FMLA, a plaintiff must show that (1) he took an FMLA leave, (2) he suffered an adverse employment decision, and (3) the adverse decision was causally related to his leave.  Conoshenti v. Public Service Electric & Gas Co., 364 F.3d 135, 146 (3d Cir. 2004).  Once a prima facie case of

retaliation is established, the defendant must produce a legitimate, non-discriminatory reason for the retaliatory employment action taken against the plaintiff.  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142 (2000).  Once a legitimate, non-discriminatory reason is proffered, the plaintiff must proffer sufficient evidence for the finder of fact to conclude by a preponderance of the evidence that the legitimate, non-discriminatory reason offered by the defendant was a pretext for retaliation.  Id. at 143. This court must first determine the length and type of FMLA leave that Mutz took.

The FMLA grants eligible employees the right to take up to twelve workweeks of leave during a twelve-month period for certain family reasons and any serious health condition that makes the employee unable to perform the functions of his position.  29 U.S.C. § 2612(a)(1).  An eligible employee may be entitled to take FMLA leave intermittently on a reduced schedule when medically necessary.  Id. § 2612(b).  The phrase "intermittent leave" is defined under the implementing regulations as "leave taken in separate periods of time due to a single illness or injury, rather than for one continuous period of time, and may include leave of periods from an hour or more to several weeks." 29 C.F.R. § 825.800.

The FMLA and its regulations impose certain notice requirements to be granted leave.  See id. §§ 825.302-825.303.  If leave is foreseeable, an employee must provide at least thirty days advance notice to the employer, or if thirty days is impossible under the circumstances, notice is required "as soon as practicable."  Id. § 825.302(a).  If leave is

unforeseeable, the employee is to give notice "as soon as practicable under the facts and circumstances of the particular case." Id. § 825.303(a).  Generally, "as soon as practicable" means no more than two days after learning of the need for the leave, although an exception is made where extraordinary circumstances prevent such notice. Id. § 825.302(b).  Notice may be provided by the employee or by a "spokesperson" if the employee is not able to do so, either in person "or by telephone, telegraph, [fax,] or other electronic means." Id. § 825.303(b).

An employee giving notice of the need for FMLA leave "need not expressly assert rights under the FMLA or even mention the FMLA," but, at a minimum, must provide sufficient information to notify the employer that he needs FMLA leave. Id. § 825.302(c).  "Although there is no precise definition as to what constitutes 'sufficient notice,' an employee is required to provide his employer with enough information for the employer to determine that the leave qualifies under the Act." McCarron v. British Telecom, 2002 WL 1832843, at *4 (E.D.Pa. Aug. 7, 2002).

However, "it is the employer's responsibility to determine the applicability of the FMLA and to consider requested leave as FMLA leave." Id. at *5.  If an employee has not provided enough information to put the employer on notice that FMLA-qualified leave is needed, the employer is expected to obtain "any additional required information through informal means." 29 C.F.R. § 825.303(b).  "In all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as FMLA-qualifying, and to

give notice of the designation to the employee." <u>Id.</u> § 825.208(a).

In this case, the record reveals that Mutz applied for FMLA leave for December 2 through December 4, 2002 for the flu, bronchitis, and sinusitis. Mutz Dep., at 76-78. In late December 2002, Kemper, on behalf of Agere, granted Mutz's request. Tammy Lee Jones Dep., at 35. Although Mutz alleges that he was also granted intermittent FMLA leave for hypothyroidism, the record reveals that Mutz only called Kemper about a possible need for intermittent FMLA leave for hypothyroidism, and Kemper advised him that he would have to fill out a separate application for that condition. <u>Id.</u> at 51. There is no evidence that Mutz ever filed a separate application for intermittent FMLA leave for hypothyroidism or that Kemper ever approved such a request. Therefore, this court finds that the only FMLA leave that Mutz took was from December 2 through December 4, 2002 for the flu, bronchitis, and sinusitis.

The parties do not dispute that Mutz suffered an adverse employment decision in February 2003. Therefore, this court must next determine whether the adverse decision was causally related to Mutz's FMLA leave.

Timing alone can be sufficient to establish the necessary causal link between the FMLA leave and the adverse action when it is "unusually suggestive." <u>See Farrell v. Planters Lifesavers Co.</u>, 206 F.3d 271, 280 (3d Cir. 2000); <u>see also Jalil v. Avdel Corp.</u>, 873 F.2d 701, 708 (3d Cir. 1989) (finding that the plaintiff established sufficient evidence of causation by showing that the adverse action occurred only two days after the protected

activity).  Absent "unusually suggestive" timing, however, timing alone is generally insufficient to establish the causal link.  <u>Farrell</u>, 206 F.3d at 280.  In such circumstances, courts may look for other evidence from which a causal connection can be inferred, such as evidence of a "pattern of antagonism" occurring between the protected activity and the adverse action.  <u>Id.</u> at 280-81.

In this case, the adverse employment action occurred in February 2003, more than two months after Mutz's FMLA leave in early December 2002.  This time gap of over two months between the FMLA leave and the adverse action is certainly not "unusually suggestive" of a causal link.  Furthermore, Mutz has not provided any other evidence from which a causal connection can be inferred.  Therefore, this court finds that Mutz has not established a <u>prima facie</u> case of retaliation.

However, even if Mutz could establish a <u>prima facie</u> case of retaliation, this court finds that Mutz's FMLA retaliation claim must be dismissed because he has not shown that Agere's reason for the adverse action was pretextual.  In this case, Agere has produced a legitimate, non-discriminatory reason for the adverse employment action taken against Mutz.  Specifically, Agere based the decision to terminate Mutz on his falsifying time sheets.  Def.'s Mem. Supp. Summ. J., Ex. K-M.

A plaintiff can prove pretext by presenting evidence that: (1) casts sufficient doubt upon each legitimate reason proffered by the defendant so that a finder of fact could reasonably conclude that each reason was a fabrication; or (2) allows a finder of fact to

infer that discrimination was more likely than not a motivating or determinative cause of the employment action.  Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir. 1994).

Mutz argues that Agere's failure to follow its progressive discipline plan when it announced on February 10, 2003 that it was terminating him shows pretext.  See Craig v. Y & Y Snacks, Inc., 721 F.2d 77, 80 (3d Cir. 1983) (failure to follow progressive discipline plan suggests pretext).  However, the record reveals that Agere did not have a progressive discipline plan for employees who falsely indicated on their time sheets that they were at work when they were not there.  Edgar Tanner Dep., at 55 (stating that Agere's policy has been to terminate employees immediately for falsification of records).  Accordingly, this court finds that Mutz's argument that Agere's failure to follow its progressive discipline plan shows pretext must fail.

Mutz also argues that Agere improperly based its finding that he falsified his time sheets on the gate clocks because there was an issue between the union and Agere regarding the replacement of a guard at the gate with a gate clock and because the gate clocks converted a salaried employee, such as Mutz, into an hourly employee.  However, a plaintiff cannot discredit a defendant's reason for an adverse decision by merely showing that it was wrong or mistaken.  Fuentes, 32 F.3d at 765.  Instead, the plaintiff must show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." Keller v. Orix

10

Credit Alliance, Inc., 130 F.3d 1101, 1108-09 (3d Cir. 1997).  "In simpler terms, [the plaintiff] must show, not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason."  Id. at 1109. "The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination]."  In this case, Mutz does not show that Agere's reason for the adverse decision was so plainly wrong that it could not have been Agere's real reason.  In fact, Mutz's own deposition testimony supports Agere's reason for the adverse decision.  See Mutz Dep., at 89-91 (stating that he left early one day in December 2002 but represented on his time sheet that he was at work the whole day); see also id. at 98 (stating that in December 2002 he was showing up to work late but did not report it).  Accordingly, this court finds that Mutz's argument that Agere improperly based its finding that he falsified his time sheets on the gate clocks does not establish pretext.

Mutz has not cast sufficient doubt upon the legitimate reason proffered by Agere so that a finder of fact could reasonably conclude that the reason was a fabrication. Moreover, Mutz has not presented any evidence that allows a finder of fact to infer that retaliation was more likely than not a motivating or determinative cause of the employment action.  Accordingly, Mutz's FMLA retaliation claim is dismissed.

**B.      The Claim under Section 510 of ERISA**

Section 510 of ERISA provides:

11

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.

29 U.S.C. § 1140.

To prove a prima facie case under Section 510, a plaintiff must show "(1) that an employer took specific actions (2) for the purpose of interfering (3) with an employee's attainment of pension benefit rights." Eichorn v. AT&T Corp., 248 F.3d 131, 149 (3d Cir. 2001). In order to recover under Section 510, a plaintiff need not prove that the sole reason for his termination was to interfere with pension rights. Dewitt v. Penn-Del Directory Corp., 106 F.3d 514, 522 (3d Cir. 1997). Nevertheless, a plaintiff must show that the defendant had the "specific intent" to violate ERISA. Id. "Proof of incidental loss of benefits as a result of a termination will not constitute a violation of [S]ection 510." Id. "[W]here the only evidence that an employer specifically intended to violate ERISA is the employee's lost opportunity to accrue additional benefits, the employee has not put forth evidence sufficient to separate that intent from the myriad of other possible reasons for which an employer might have discharged him." Id. at 523.

Therefore, to recover under Section 510, a plaintiff must show that the defendant made a conscious decision to interfere with the plaintiff's attainment of pension eligibility or additional benefits. Id. Because "smoking gun" evidence of specific intent to discriminate does not exist in most cases, the evidentiary burden in cases involving

Section 510 may also be satisfied by the introduction of circumstantial evidence.  <u>Id.</u>

Mutz argues that Agere's failure to follow its progressive discipline plan in terminating him is evidence of its intent to violate ERISA.  However, as this court previously indicated, Agere did not have a progressive discipline plan for employees who falsely indicated on their time sheets that they were at work when they were not there. Tanner Dep., at 55.  Instead, Agere's policy was to immediately terminate employees who falsified their records.  <u>Id.</u>  Accordingly, this argument must fail.

Mutz also argues that Agere's erroneous finding that he falsified his time sheets is evidence of its intent to violate ERISA.  However, as noted above, Mutz's own deposition testimony supports Agere's finding that Mutz falsely indicated on his time sheets on numerous occasions that he was at work when he was not there.  <u>See</u> Mutz Dep., at 89-91, 98.  Therefore, this claim must fail.

Finally, Mutz appears to believe that Agere's failure to consider his intermittent FMLA leave is evidence of its intent to violate ERISA.  However, the record reflects that the only FMLA leave that Mutz took was from December 2 through December 4, 2002 for the flu, bronchitis, and sinusitis.  <u>Id.</u> at 76-78; Tammy Lee Jones Dep., at 35.  Because Mutz was never on intermittent FMLA leave, there was no reason for Agere to consider such leave when it disciplined him.  Accordingly, this court finds that this argument lacks merit.

The record shows that Mutz was disciplined for falsely indicating on his time

sheets on numerous occasions that he was at work when he was not there.  Mutz's loss of benefits as a result of the discipline was only incidental.  Since Mutz has not demonstrated that Agere had the specific intent to violate ERISA when it disciplined him, the claim under Section 510 of ERISA is dismissed.

## IV.    CONCLUSION

Because Mutz has not shown a causal connection between his FMLA leave in early December 2002 and the adverse employment action in February 2003, and because Mutz has not shown that Agere's reason for the adverse decision was pretextual, the FMLA retaliation claim is dismissed.  Moreover, because Mutz has not established that Agere had the specific intent to violate ERISA, Mutz's claim under Section 510 of ERISA is dismissed.  Agere did not move for summary judgment on Mutz's claim under Section 2615(a)(1) of the FMLA; therefore, that claim remains.  An appropriate order follows.

### ORDER

AND NOW, this 21st day of July, 2005, upon consideration of Agere, Inc.'s motion for summary judgment (Doc. # 16), and replies thereto, it is hereby ORDERED that said motion is GRANTED.  The FMLA retaliation claim and the claim under Section 510 of ERISA are DISMISSED.  The claim under Section 2615(a)(1) of the FMLA remains.

/s/ _____

LAWRENCE F. STENGEL, J.

14